UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| NOUSHIN FUHRER, | ) | No. CV 16-4066-PLA |
|           Plaintiff, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) ) | |
| NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
|           Defendant. | ) ) | |

**I.**

**PROCEEDINGS**

    Plaintiff filed this action on June 8, 2016, seeking review of the Commissioner's[1] denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on August 2, 2016, and December 9, 2016. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on March 9, 2017, that addresses their positions concerning the disputed issues in the case. The Court has taken the

---

    [1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

Joint Stipulation under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on December 25, 1964. [Administrative Record ("AR") at 118.] She has past relevant work experience as a jewelry salesperson, and in the composite job of office manager and dental assistant. [AR at 43.]

On September 27, 2012, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since June 26, 2010. [AR at 17, 118-19.[2]] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 17, 83-84.] A hearing was held on October 20, 2014, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 27-46.] A vocational expert ("VE") also testified. [AR at 43-46.] On November 17, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability at any time from June 26, 2010, the alleged onset date, through September 30, 2011, the date last insured. [AR at 17-22.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 10-11.] When the Appeals Council denied plaintiff's request for review on February 10, 2016 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622

---

[2] At the hearing, the ALJ noted there were two alleged onset dates appearing in the record: June 26, 2010, and July 28, 2012. [AR at 29-30 (citing AR at 59, 118).] Plaintiff confirmed that June 26, 2010, was the correct alleged onset date. [AR at 30.]

F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  Id.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  Id.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.    **THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from June 26, 2010, the alleged onset date, through September 30, 2011, her date last insured.[3]  [AR at 19.]  At step two, the ALJ concluded that "there were no medical signs

---

[3]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through September 30, 2011.  [AR at 19.]

4

or laboratory findings to substantiate the existence of a medically determinable impairment." [Id.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of June 26, 2010, through September 30, 3011, the date last insured. [AR at 22.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred (1) when he determined at step two that plaintiff did not have a medically determinable impairment prior to September 30, 2011, her date last insured [JS at 2-9, 15-21]; and (2) when he assessed plaintiff's credibility. [JS at 8.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision of the ALJ.

**A.  STEP TWO LEGAL STANDARD**

At step two of the five-step process, plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1508, 404.1509, 404.1520(a)(4)(ii); see generally Bowen v. Yuckert, 482 U.S. 137, 148, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (Secretary may deny Social Security disability benefits at step two if claimant does not present evidence of a "medically severe impairment"). This must be "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. The Commissioner's regulations define "symptoms" as a claimant's own description of her physical or mental impairment. 20 C.F.R. § 404.1528. "Signs," by contrast, "are anatomical, physiological, or psychological abnormalities which can be observed, apart from [the claimant's] statements . . . [,] [and] must be shown by medically acceptable clinical diagnostic techniques." Id. Finally, "[l]aboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques." Id. A claimant's statements about an impairment (i.e., "symptoms") "are not enough [by themselves] to establish

that there is a physical or mental impairment." Id.

When reviewing an ALJ's findings at step two,[4] the district court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." Webb, 433 F.3d at 687 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")). Here, the ALJ did not err in finding that plaintiff did not meet her burden of establishing that during the relevant period from June 26, 2010, through September 30, 2011, she had a severe medically determinable impairment or combination of impairments that had lasted, or could be expected to last, at least twelve months.

**B.   ANALYSIS**

The ALJ in this case found that through plaintiff's date last insured, "there were no medical signs or laboratory findings to substantiate the *existence* of a medically determinable impairment." [AR at 19 (emphasis added) (citation omitted).] He also noted that although plaintiff "complained of anxiety, stress, and depression for a couple months prior to the alleged onset date, there is no evidence of *severe symptoms lasting the required 12-month period*, that persisted despite appropriate treatment." [AR at 20 (emphasis added).] The ALJ gave several reasons for his conclusion: (1) the records do not show the types of serious symptoms and dysfunction that would be expected if plaintiff was as limited as she alleged; (2) although plaintiff was referred to a mental health specialist, there is no evidence she followed through with the recommendation, and her "failure to seek potentially ameliorative treatment suggests that [plaintiff's] symptoms were

---

[4] Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is "not severe" only if the evidence establishes a "slight abnormality" that has "no more than a minimal effect" on a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); Yuckert, 482 U.S. at 153-54 & n.11 (Social Security claimants must make "*de minimis*" showing that impairment interferes with ability to engage in basic work activities) (citations omitted); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citations and internal quotation marks omitted).

not so severe so as to prevent all work"; (3) there are no treatment records in the file from the alleged onset date through the date last insured; (4) there is no evidence in the record to support a finding of fibromyalgia or severe headaches[5]; and (5) the statements of complete disability made by treating physician David Dodson, M.D. on February 22, 2013, and October 2, 2013, are entitled to "little weight," because they are conclusory and provide little explanation of the evidence relied on in forming the opinions, and because there are no treatment notes during the relevant period to support his opinion. [AR at 20-21 (citations omitted).]

Plaintiff argues that the ALJ addressed severity "only generically" and made no finding of whether her mental health "condition did or did not more than minimally affect[] her ability to work." [JS at 6.] She argues that the failure to consider the April 19, 2010, opinion of her treating provider, Serena Friedman, M.D., who recommended that plaintiff seek evaluation by a mental health specialist, and should be limited to working 32 hours a week with decreased workplace stress, is a material error because defendant "defines the ability to engage in substantial gainful activity as the ability to work 8 hours a day, 40 hours a week . . . on a sustained basis." [JS at 7 (citing Soc. Sec. Ruling ("SSR")[6] 96-8p).] Additionally, plaintiff contends that Dr. Friedman's recommendation that plaintiff return to a workplace with less stress also "precludes an adverse Step 2 finding." [JS at 8.] Plaintiff argues that the ALJ's statement that plaintiff did not have severe symptoms that lasted at least twelve months "is inconsistent with other evidence such as Plaintiff's testimony at the hearing in 2014 that she still suffered anxiety." [JS at 9 (see also AR at 41-42 (stating at the hearing that her anxiety "comes and goes" and if she does not take care of herself her "immune system goes down and [her] body is weak," and she "start[s] panicking")).[7]] Plaintiff submits that the ALJ's finding that plaintiff did not see a specialist after being referred by

---

[5] Plaintiff only contests the ALJ's finding regarding her mental health impairments.

[6] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

[7] It thus appears that plaintiff's anxiety in 2014 may have been related to the physical problems she was then experiencing. [See AR at 38-42, 418.]

her treating providers, Janina Meissner-Fisk, D.O., and Dr. Friedman, "is inconsistent with the requirement that an ALJ consider reasons for failing to seek treatment," and "should take into account another factor in cases of mental impairment, and that is the ability of the mentally-ill claimant to alleviate symptoms by other means. 'Individuals with mental disorders often adopt a highly restricted and/or inflexible lifestyle within which they appear to function well.'" [Id. (citing SSR 85-15p).] Finally, plaintiff submits that the ALJ's finding that plaintiff did not have "'appropriate treatment' is inconsistent with the anti-anxiety medications prescribed by her primary care physician."[8] [Id.]

Defendant counters that plaintiff did not meet her burden at step two to show she suffered from a severe work-limiting impairment during the relevant period, and that the impairment is expected to last at least 12 months. [JS at 9-10 (citations omitted).] She notes that both Dr. Fisk and Dr. Friedman declined to render an opinion on plaintiff's disability status, and both recommended follow-up with a mental health professional, but there is no evidence in the record that plaintiff followed up with this recommendation, or returned to see Dr. Friedman by May 3, 2010, as also recommended by Dr. Friedman. [JS at 11 (citing AR at 233, 537).] Additionally, defendant asserts that although plaintiff implies she did not follow through with treatment *because of* her mental health issues, plaintiff also admitted that she was working full-time through June 26, 2010. [JS at 12 (citing AR at 135, 166-67).] Defendant further contends that plaintiff's testimony at the hearing in 2014 that she still suffers from anxiety -- "over 3 years after her date last insured" -- is "stale." [Id.] She also observes that there is "no medical evidence during the relevant period at all." [JS at 13.] With respect to plaintiff's argument that Dr. Friedman's recommendation that plaintiff work a 32-hour workweek is evidence of disability, defendant notes that Dr. Friedman's recommendation covered only a two-week period, through May 3, 2010, when plaintiff was

---

[8] The ALJ, however, did not state that plaintiff did not receive "appropriate treatment." What he stated was that "there is no evidence [in the record] of severe symptoms lasting the required 12-month period, that *persisted despite appropriate treatment.*" [AR at 20 (emphasis added).] Even if plaintiff had continued taking anti-anxiety medications prescribed by her treating providers -- which is not supported by the record -- other than the March and April 2010 records of Dr. Fisk and Dr. Friedman, there simply "is *no* record of mental health treatment *during the relevant period.*" [Id. (emphases added).]

1  supposed to -- yet did not -- return for re-evaluation or seek treatment from a mental health
2  professional. [JS at 14 (citations omitted).] Defendant also notes that Dr. Fisk's and Dr.
3  Friedman's opinions were issued several months before the alleged onset date, their work
4  excusals were both limited to short periods of approximately two weeks, and Dr. Friedman
5  expressly stated that she was "unable to determine [plaintiff's] permanent disability status at this
6  time." [JS at 14 (citing AR at 537).] Finally, defendant notes that Dr. Dodson's opinion was
7  rendered more than a year after plaintiff's date last insured, and a few months after she applied
8  for disability benefits, and is completely unsupported by any treatment notes for the relevant
9  period. [JS at 13, 15.]

10 After reviewing the record, the Court finds there is substantial evidence from which the ALJ
11 could find that the medical evidence clearly established that plaintiff did not have a severe
12 medically determinable impairment during the relevant period that was expected to last a
13 continuous twelve-month period. As noted by the ALJ [AR at 20], the only evidence in the record
14 "near the alleged onset date and prior to the date last insured" reflects that in March and April
15 2010 plaintiff requested that her doctors provide her with an excuse to take time off from work
16 because she "worried about 'having a nervous breakdown' if she has to go back to work." [AR at
17 233; see also AR at 234 (noting plaintiff was "concerned because of all the stress she is
18 experiencing at work").] On March 23, 2010, Dr. Fisk indicated that plaintiff was experiencing
19 increased stress with anxiety and insomnia and "feels sick when she thinks about going in" to
20 work, and observed that plaintiff's symptoms were "situational," i.e., related to stress at work. [AR
21 at 234.] She prescribed Hydroxyzine for plaintiff to take as needed for anxiety and insomnia and
22 excused plaintiff from work for two weeks. [Id.] On March 31, 2010, plaintiff complained to Dr.
23 Fisk that she was having problems with side effects from the anxiety medicine, and was told to
24 take half the dosage. [AR at 235.] On April 2, 2010, plaintiff returned to the clinic and again
25 complained that she could not take the Hydroxyzine because taking one tablet made her feel
26 "weak and 'drugged' for 3 days." [AR at 233.] She stated she was still feeling stressed and
27 anxious and requested a note to excuse her from work for another week. [Id.] Instead, Dr. Fisk
28 recommended that plaintiff see a mental health professional in order to be evaluated, as she "did

not feel comfortable making a recommendation for further time off work." [Id.] On April 19, 2010, plaintiff saw Dr. Friedman at a different clinic. [AR at 536.] Dr. Friedman prescribed Xanax as needed for plaintiff's anxiety, and also recommended that plaintiff see a psychologist. [Id.] Dr. Friedman stated that plaintiff could return to work on April 20, 2010 -- the next day -- albeit working a reduced workweek with reduced stress at the workplace. [AR at 537.] Dr. Friedman told plaintiff to return to the office in two weeks for re-evaluation but, despite Dr. Friedman's recommendations, there is no evidence that plaintiff sought any follow-up care with a mental health professional, or with Dr. Friedman, either before or after plaintiff stopped working on June 26, 2010. [See AR at 145, 166.] As found by the ALJ, plaintiff's failure to seek treatment is an indication that her symptoms were not so severe as to prevent all work. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ is permitted to consider lack of treatment in considering a claimant's subjective symptom testimony).

Moreover, contrary to plaintiff's contention that the ALJ addressed severity "only generically" and made no finding of whether her mental health "condition did or did not more than minimally affect[] her ability to work," the ALJ *did* consider the severity of plaintiff's alleged mental health impairments when he found they were not "so severe as to prevent all work" and/or were not expected to last for a continuous twelve-month period. [AR at 20.] Because there were no signs or findings during the relevant period supporting the existence of a severe medically determinable impairment that was expected to last for a continuous period of at least 12 months, and the only symptoms were those reported by plaintiff, substantial evidence supported the ALJ's finding that plaintiff did not meet her burden at step two to show she suffered from a severe medically determinable impairment during the relevant period that is expected to last for a continuous period of at least 12 months and there was no error.

There is also substantial evidence to support the ALJ's finding that Dr. Dodson's 2013 statements should be given "little weight." [AR at 21.] As part of his February 22, 2013, "Medical Source Statement," Dr. Dodson stated that plaintiff is incapable of "even 'low stress' work," and that all of her days were "bad days." [AR at 412-14.] On October 22, 2013, in a "To Whom It May Concern" letter, Dr. Dodson stated that plaintiff is "medically disabled due to severe chronic

fatigue/immune deficiency syndrome ["CF/IDS"]," and that she "should be considered permanently disabled." [AR at 458.] Preliminarily, although he reported in his February 22, 2013, "Medical Source Statement" that he had treated plaintiff since her first visit on November 21, 2002, Dr. Dodson also reported that in the ten-year period between that date and February 22, 2013, he had treated her only six times -- five of which were between November 21, 2012, and February 22, 2013 -- all well beyond her date last insured of September 30, 2011. [AR at 412-14; see also AR at 417-24.] The records show that Dr. Dodson did not diagnose plaintiff with CF/IDS until January 21, 2013, and that her November 2012 through February 2013 visits primarily chronicled thyroid, respiratory, and infectious issues (sore throat, earache, cough); as well as complaints of chest pain, abdominal pain, migraines, and excessive thirst. [AR at 417-24.] On November 21, 2012, Dr. Dodson also commented that post-traumatic stress disorder "related to the events surrounding [plaintiff's] DUI arrest one year ago" may be "part of the problem," "as her problems [with fatigue, polydipsia, nocturia, history of sepsis, and migraine] began *after that*." [AR at 418 (emphasis added); see also AR at 417-24.] Other than a brief mention that plaintiff had "lots of worrisome concerns" about her *physical* symptoms [AR at 415], and during one visit appeared "mildly depressed" [AR at 421], Dr. Dodson's records reflect no other indication of any mental health issues and contain no indication that plaintiff was taking any anti-anxiety medications during the time he treated her, let alone during the relevant time period. [See AR at 417-24.] Indeed, Dr. Dodson's opinions did not even address plaintiff's mental health and/or physical functioning specifically *during the relevant period*. See Freeman v. Apfel, 208 F.3d 687, 691 (8th Cir. 2000) (where treating physician's evidence "did not pertain to [claimant's] condition during the relevant period [of disability] and was inconsistent with other substantial evidence that did pertain to the relevant period, the ALJ was under no obligation to give [the treating physician's] opinion controlling weight.") (citations omitted); see also Lind v. Comm'r of Soc. Sec., 2008 WL 4370017, at *14 (S.D. Cal. Sept. 24, 2008), aff'd 370 F. App'x 814 (9th Cir. 2010). Moreover, to the extent Dr. Dodson arguably intended to address plaintiff's condition during the relevant period -- which appears unlikely -- the ALJ properly rejected Dr. Dodson's opinions as unsupported by any treatment notes "during the period at issue." See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th

11

Cir. 2005) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation and internal quotation marks omitted); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]").

In short, in light of the entire record, plaintiff's testimony in 2014 that she was still experiencing "symptoms" of anxiety is, by itself, insufficient to show that her alleged mental health issues experienced in March and April 2010 lasted more than twelve months to satisfy plaintiff's burden at step two. See, e.g., Ukolov, 420 F.3d at 1005 ("[Social Security Regulations] provide that under no circumstances may the existence of an impairment be established on the basis of symptoms alone") (quoting Social Security Ruling 96-4p) (quotation marks omitted); 20 C.F.R. § 404.1508. Indeed, it appears that plaintiff's alleged 2014 "symptoms" were the result of situational factors that arose well after the date last insured and were completely unrelated to the work-related factors that led her to Dr. Fisk and Dr. Friedman in March and April 2010.

Because substantial evidence supports the ALJ's finding that through the date last insured "there were no medical signs or laboratory findings to substantiate the existence of a [severe] medically determinable impairment" that was expected to last a continuous twelve-month period, remand or reversal on this basis is not warranted.[9]

## VI.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **denied**; and (2) the decision of the Commissioner is **affirmed**.

---

[9] The Court need not address whether the ALJ erred when he considered plaintiff's subjective symptom testimony because -- even if there was error -- there was no error in his determination that "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment" during the relevant period from June 26, 2010, through September 30, 2011, that had lasted, or could be expected to last, at least twelve months, and plaintiff's testimony regarding her symptoms cannot, by itself, establish the existence of such an impairment at step two. 20 C.F.R. § 404.1508.

1  **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the
2  Judgment herein on all parties or their counsel.
3  **This Memorandum Opinion and Order is not intended for publication, nor is it**
4  **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

6  DATED: March 16, 2017

                                       /s/ Paul L. Abrams
                                       _____
                                              PAUL L. ABRAMS
                                       UNITED STATES MAGISTRATE JUDGE